156 A.D.2d 612 (1989)
In the Matter of Tap Electrical Contracting Service, Inc., Appellant,
v.
Thomas F. Hartnett, as Commissioner of Labor of The State of New York, Respondent
Appellate Division of the Supreme Court of the State of New York, Second Department.
December 22, 1989
Mollen, P. J., Mangano, Thompson, Bracken and Brown, JJ., concur.
Adjudged that the petition is granted, on the law, without costs or disbursements, to the extent of annulling so much of the final order and determination as determined that the petitioner willfully violated Labor Law article 8 by (1) underpaying prevailing wages and supplements to the three individuals it classified as "trainees", and (2) failing to pay or provide prevailing supplements with regard to pension, welfare, annuity and joint educational funds to or on behalf of 28 employees; the petition is denied in all other respects and the determination is otherwise confirmed, the proceeding is otherwise dismissed and the matter is remitted to the respondent for the computation of the amount of the petitioner's underpayments of non-ERISA supplements in accordance herewith.
The petitioner entered into a $2,753,799.93 contract with the New York State Department of Transportation on January 18, 1985 to replace lighting on a 12.75-mile section of the Northern State Parkway. The project was funded by both the Federal and State Governments. An investigation by the New York State Department of Labor led to charges being brought *613 against the petitioner alleging, inter alia, that it willfully violated Labor Law § 220 by (1) underpaying prevailing wages and supplements to three individuals who the petitioner erroneously classified as "trainees"; (2) failing to pay prevailing supplements, including vacation and holiday supplements, to or on behalf of 28 other employees; and (3) employing an excessive number of apprentices in violation of the applicable apprentice ratio as required by the prevailing wage schedule in the contract. In his report and recommendation dated July 25, 1989, the Hearing Officer found that all of the charges had been substantiated except the allegation that the petitioner had violated the applicable apprentice ratio. By order and determination dated October 31, 1989, the respondent Commissioner adopted the Hearing Officer's report and recommendation except as to his finding regarding the violation of the apprentice ratio. On that issue, the Commissioner determined that the petitioner had in fact violated the ratio. The Commissioner further determined that each of the aforesaid violations was willful. Because this final determination of willful violations by the petitioner was the second such determination rendered against the petitioner within a period of six years, the Commissioner, pursuant to Labor Law § 220-b (3) (b), barred the petitioner from bidding on or being awarded any public work contract for five years. Moreover, the Commissioner directed the petitioner to pay its employees for the underpayment of wages and supplements plus interest and imposed a civil penalty.
The petitioner maintains that the Employee Retirement Income Security Act of 1974 (hereinafter ERISA; 29 USC § 1001 et seq.) preempts the New York State Labor Law and that, in any event, the Commissioner's findings that the petitioner willfully violated the Labor Law are not substantiated by the record. Although we agree with the petitioner that the Commissioner's application of the Labor Law to some of the charges lodged against the petitioner was improper, we conclude that the State statute has not been preempted with regard to the underpayment of vacation and holiday benefits. Since the record supports the Commissioner's determination that the petitioner violated Labor Law article 8 by underpaying these benefits and that such violation was willful, the petitioner was properly barred from bidding on or being awarded any public work contract in light of the fact that this was the second such final determination rendered against it within six years.
ERISA preempts "any and all State laws insofar as they *614 * * * relate to any employee benefit plan" (29 USC § 1144 [a]). An "employee welfare benefit plan" is defined as: "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs" (29 USC § 1002 [1]; Massachusetts v Morash, 490 US ___, 109 S Ct 1668).
The United States Supreme Court has held that: "[t]he reference to vacation payments in [29 USC § 1002] should be understood to include within the scope of ERISA those vacation benefit funds, analogous to other welfare benefits, in which either the employee's right to a benefit is contingent upon some future occurrence or the employee bears a risk different from his ordinary employment risk. It is unlikely that Congress intended to subject to ERISA's reporting and disclosure requirements those vacation benefits which by their nature are payable on a regular basis from the general assets of the employer and are accumulated over time only at the election of the employee" (Massachusetts v Morash, supra, at ___, at 1673).
Since the petitioner did not provide its employees with vacation and holiday supplements through a plan but rather, paid them through its payroll, ERISA does not preclude the application of the New York State Labor Law to regulate the rate of such payments (see, Massachusetts v Morash, supra; see also, General Elec. Co. v New York State Dept. of Labor, 891 F.2d 25). We further find that there is substantial evidence in the record to support the Commissioner's determination that the petitioner willfully underpaid the prevailing vacation and holiday rate since the company conceded that it utilized an incorrect formula to compute the rate of pay and because it improperly credited itself for benefits paid over the prevailing supplement for apprenticeship benefits.
We agree with the petitioner, however, that several of its supplement plans were covered and governed by ERISA, namely, the welfare, pension, annuity and joint educational funds, and that the matter must therefore be remitted to the Department of Labor to compute the exact amount of non-ERISA supplement underpayments (Massachusetts v Morash, supra; General Elec. Co. v New York State Dept. of Labor, supra). *615 In this regard, we note that we are in agreement with the petitioner's assertion that its use of Federal trainees on this Federally funded project was proper and, thus, the Commissioner's finding that the petitioner willfully violated Labor Law article 8 by employing "trainees" must be annulled (cf., Matter of Monarch Elec. Contr. Corp. v Roberts, 70 N.Y.2d 91; Matter of Tap Elec. Contr. Serv. v Roberts, 133 AD2d 1017; but see, Siuslaw Concrete Constr. Co. v State of Wash., Dept. of Transp., 784 F.2d 952). Additionally, with respect to the petitioner's challenge to the Commissioner's finding that it violated the applicable apprentice ratio, we note that this violation did not, and could not, constitute a basis for the petitioner's debarment (see, Labor Law § 220-b [3] [b]). Moreover, no civil penalty was imposed upon the petitioner based on this finding.
Although we conclude that certain of the Commissioner's findings of a willful violation of Labor Law article 8 did not provide a proper basis for his final order and determination of a willful violation pursuant to Labor Law § 220-b (3) (b), we reject the petitioner's claim that the final order and determination must be annulled in its entirety. As stated previously, we find that the Commissioner properly concluded that the petitioner willfully failed to pay the prevailing supplements for vacations and holidays in violation of Labor Law article 8. Accordingly, the Commissioner's final order and determination with regard to these matters must be sustained and, since this is the petitioner's second final order and determination of a willful violation pursuant to Labor Law § 220-b (3) (b) within a consecutive six-year period, debarment is mandatory.
We have considered the petitioner's remaining contentions and find them to be without merit.